**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramona Lopez, | No. CV 05-1794-PHX-SMM |
| Plaintiff, | **ORDER** |
| vs. | |
| John E. Potter, | |
| Defendant. | |

Currently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 47), wherein Defendant requests that the Court enter summary judgment in his favor and against Plaintiff because there are no genuine issues of material fact, and thus, Defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 and LRCiv 56.1. In response to his motion, Plaintiff filed a "Motion to Dismiss in Opposition to Defendants [sic] Motion for Summary Judgment Plaintiff's 1st Response." (Doc. 60).[1] Plaintiff, however, did not file a Separate Statement of Facts, nor did her Response conform with the Federal or

---

[1] Plaintiff was advised by Order of this Court on numerous occasions as to the proper procedures to follow when drafting and filing a Response/Opposition to a Motion for Summary Judgment. More specifically, Plaintiff was directly advised by this Court which federal and local rules are applicable to Motions for Summary Judgment and how to comply therewith. She was further advised that noncompliance with those Rules may be deemed a consent to the denial or granting of the Motion for Summary Judgment and that the Court may dispose of the motion summarily-without further explanation. (Doc. 55). Despite being so advised, Plaintiff has repeatedly failed to comply with the Federal and Local Rules.

Local Rules of Civil Procedure.[2] Notwithstanding Plaintiff's failure to comport with the Rules, the Court will address the merits of her claims.

In her Second Amended Complaint, Plaintiff alleged the following: Employment Discrimination in violation of the Rehabilitation Act, 29 U.S.C. §§ 791 et seq. ("Rehabilitation Act")(Count One); Employment Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 ("Title VII")(Count Two); and Retaliation in violation of the Rehabilitation Act and Title VII (Count Three).

## **BACKGROUND**[3]

Plaintiff joined the United States Postal Service ("USPS") as a full time employee in December 1998 as a mail processing clerk, which is the position she held at all times relevant to the alleged discriminatory conduct in each of her EEO claims. (Doc. 46, ¶¶ 1, 10, 14, 33, 66, 72, 83.)

This lawsuit is based upon the formal EEO complaints Plaintiff filed with the USPS alleging that she was discriminated on the bases of race, sex, national origin, physical and mental disability, and retaliation. The complaints were denominated during the administrative process as Agency Case Nos. 1E-853-0083-00 (**EEO 83-00 or the ASP Claim**), 1F–853-0062-03 (**EEO 62-03 or the Dilettoso Claim**), IF-853-0077-03 (**EEO 77-03 or the 2003 Rio Salado Claim**), and 1F-853-0044-04 (**EEO 44-04 or the 2004 Rio Salado Claim**).

At the time of the first alleged act of discrimination, Plaintiff was employed as a "Level 4 Part-Time Flexible (PTF) Mail Processor" at the USPS's Phoenix Processing and Distribution Center (or General Mail Facility (GMF)). (Doc. 46 ¶ 10.) In November 2002,

---

[2] LRCiv 56.1 and Fed.R.Civ.P. 56.

[3] Because Plaintiff failed to file a Separate Statement of Facts, contrary to Local Rule 56.1(b), the background facts were gleaned primarily from Defendant's Memorandum of Points and Authorities (Doc. 47) and Defendant's Statement of Facts in Support of its Motion for Summary Judgment (Doc. 46) and are based on evidence in the record.

- 2 -

Plaintiff requested that she be transferred to the Rio Salado Station.[4] The request was granted, and Plaintiff worked as a "Level 5 Mail Processing Clerk," a position she held when she made her final claim of discrimination. (Doc. 46 ¶¶ 65, 71, 82.)

**A.     THE ASP CLAIM: EEO 83-00 (National Origin, Sex, Disability, Retaliation)**

It is the policy of the USPS that whenever an employee will be unable to be present for a shift, the USPS must be notified of said absence prior to the beginning of the shift. On February 13, 2000, while employed at the GMF of the USPS, Plaintiff was absent from work because, due to a domestic dispute, she was otherwise occupied in jail. Plaintiff failed to call GMF prior to the commencement of her shift, thereby violating the USPS policy by both (1) failing to notify the USPS of her impending absence prior thereto and (2) failing to be present at work during a designated shift. (Doc. 46 ¶¶ 11, 12.) On March 15, 2000, Plaintiff received a disciplinary action known as a "Letter of Warning" (LOW) for her unapproved absence and failure to notify thereof. (Doc. 46 ¶ 13.)

Between November 23, 1999 and July 5, 2000 Plaintiff was disciplined or otherwise advised that she had violated the USPS policies on numerous occasions.  For example, Plaintiff had been disciplined for: failing to meet the duties and responsibilities of a PTF mail processor clerk, wandering away from her duty station, failing to report to her machine at her scheduled time,  failure to maintain regular attendance, and for creating a hostile work environment. (Doc. 46 ¶¶ 13, 14.)

Despite her record of policy violations, Plaintiff nevertheless applied for the Associate Supervisor Program (ASP), a program designed to recruit and select *qualified individuals* to fill Associate Supervisor EAS-15 positions. (Doc. 46 ¶¶ 15, 16.) Candidates are evaluated based upon their respective supervisors' evaluations in pertinent subject areas such as sick

---

[4] According to Defendant's Statement of Facts, said request was made subsequent to an accusation made against Plaintiff that she was stalking a male manager of the USPS. Plaintiff allegedly responded by claiming that he was harassing her.

time, leave of absence records, and disciplinary records. (Doc. 46 ¶ 15.) Based upon Plaintiff's history of USPS policy violations and other unsuitable conduct, Plaintiff's supervisor, JoAnn Hernandez (Ms. Hernandez), gave Plaintiff an unacceptable rating for the ASP. (Doc. 46 ¶¶ 15, 17.) Due to said unacceptable rating, Plaintiff was disqualified from the ASP. (Doc. 46 ¶ 16.) Consequently, Plaintiff filed formal complaints of discrimination claiming that she had been discriminated against on the basis of race (Hispanic), sex (female), mental disability (depression), and retaliation for prior EEO activity when (1) she was issued a March 15, 2000 LOW for her unapproved absence; (2) was disqualified from the ASP on August 1, 2000; and (3) was denied FMLA leave. (Doc. 46 ¶¶ 19-23.)

An investigation into the ASP issue failed to establish that Plaintiff was discriminated against. (Doc. 46 ¶ 24.) The administrative judge (ALJ) agreed that the USPS had properly dismissed the LOW and FMLA issues. Based upon the entire record, the ALJ further found that the USPS was entitled to summary judgment because Plaintiff had failed to establish that there was a genuine issue of material fact or genuine credibility issues for the USPS's articulated reason for disqualifying Plaintiff from the ASP program. (Doc. 46 ¶¶ 26-28.) Plaintiff appealed the decision regarding the alleged discrimination involved in disqualifying her the from the ASP program, but did not appeal the dismissal of her LOW and FMLA leave issues, and therefore failed to exhaust the latter two issues. (Doc. 46 ¶ 29.) The EEOC, Office of Federal Operations (OFO) affirmed the ALJ's decision. (Doc. 46 ¶ 30.)

**B.    THE DILETTOSO CLAIM: EEO 62-03 (Sex)**

On November 1-2, 2002, Plaintiff was advised by Dave Carey (Carey)[5] that David Dilettoso (Dilettoso) claimed that Plaintiff had been stalking him. Plaintiff responded that it was Dilettoso who had been harassing her, and thus, she requested that she be transferred

---

[5] Carey was working at GMF as Manager, Distribution Operations (MDO) during the time that Plaintiff was working as Mail Processing Clerk in 2002.

- 4 -

1 away from Dilettoso to the Rio Salado site.[6] ([Doc. 46 ¶¶ 34-37.) Plaintiff was immediately
2 transferred to Rio Salado. Further, both she and Dilettoso were placed on administrative
3 leave pending an investigation into their allegations. (Doc. 46 ¶¶ 37, 38.)

4 Subsequent to the investigation, and after 45 days had expired, Plaintiff contacted an
5 EEO counselor claiming that Carey had told her to wait until after the investigation to file
6 any EEO claims.[7] (Doc. 46 ¶¶ 42-25.) Consequently, the USPS dismissed her claims for
7 being untimely; however, the OFO found an equitable basis for Plaintiff's delay in reporting
8 this EEO claim and ordered an investigation. After the investigation, the claim was
9 consolidated with EEO 77-03, and the administrative action was dismissed because the
10 instant action was filed. (Doc. 46 ¶¶ 48, 49.)

11 Plaintiff asserts that she was subjected to sexual discrimination because she was
12 improperly "disciplined" when she was transferred from the GMF to Rio Salado, was
13 assigned to a different shift, and was placed on administrative leave. (Doc. 46 ¶ 39.) Plaintiff
14 (incorrectly[8]) contends that Dilettoso was not placed on administrative leave pending the
15 investigation. (Doc. 46 ¶¶ 38-41.) Plaintiff was taken off administrative leave in June 2003.
16 According to the record, Dilettoso was not taken off administrative leave prior to the time
17 Plaintiff was taken off administrative leave. (Carey Dec., ¶ 12.)

18 ///
19 ///
20

---

22 [6] Plaintiff admitted that she had not complained before to the USPS management that David Dilettoso was harassing her. [Carey Dec. ¶ 8.]

24 [7] Defendant concedes that for purposes of its Motion for Summary Judgment, his exhaustion defense for the Dilettoso Claim is a question of fact, and therefore summary judgment is not appropriate ***on that basis***.

26 [8] According to the record, Plaintiff's assertion is incorrect. (Doc. 46.) She did not provide the Court with evidence to the contrary.

**C.     THE 2003 RIO SALADO CLAIM:   EEO 77-03[9]   (Mental Disability and Retaliation)**

After Plaintiff returned from administrative leave, she was reassigned to Rio Salado. There, the USPS attempted to find work for her within the restrictions for the on-the-job injury that had been accepted by the Department of Labor (DOL). (Doc. 46 ¶ 51, 52.) When the USPS located suitable work on a night shift, Plaintiff objected to working that shift because of her alleged need to sleep during those hours for a mental disability. (Doc. 46 ¶¶ 50-53.) She relied upon medical certificates from 2001, even though a more recent medical certificate did not require that she work a particular shift. (Doc. 46 ¶¶ 53, 54.) The USPS could not locate work that was within her lifting restrictions that was also on the shift she desired.  Thereafter, she contacted an EEO counselor claiming discrimination on the basis of disability (mental) and retaliation for prior EEO activity. (Doc. 46 ¶¶ 50, 57, 58.)

Plaintiff thereafter submitted an untimely formal complaint, claiming that she could not timely file the complaint due to medical reasons. However, she did not provide support for this claim, and actual documentation in the record supports that the delay was *not* justified. (Doc. 46 ¶¶ 59-61.)

**D.     THE 2004 RIO SALADO CLAIM – EEO 44-04 (Sex, Disability, Retaliation)**

While Plaintiff was assigned to Rio Salado in 2003 and 2004, the USPS tried to provide Plaintiff with suitable work options within her varied medical restrictions. (Doc. 46 ¶¶ 66-77.) Plaintiff had a lifting restriction of twenty (20) pounds or less, and claimed to be unable to lift items above her shoulder due to severe pain. As stated above, Plaintiff also claimed to have a mental impairment which prevented her from working night shifts. (Doc.

---

[9] EEO 62-03 and EEO 77-03 were not finally resolved against Plaintiff at the administrative level, but dismissed per Final Agency Decision (FAD) dated September 2, 2005 because she filed the present action before Plaintiff exhausted her administrative remedies. (Final Agency Decision, September 22, 2005.)

- 6 -

46 ¶¶ 67-69, 72.) At the USPS' request, Plaintiff underwent an IME, which revealed *no objective basis for her inability to lift beyond shoulder*. (Doc. 46 ¶¶ 72, 73.) Despite those findings, the USPS offered Plaintiff a position that was within her alleged restrictions. (Doc. 46 ¶¶ 74-77.) Shortly thereafter, Plaintiff refused to perform her duties associated with that position, claiming that it still violated her medical restrictions. (Doc. 46 ¶¶ 74-77.) Consequently, Plaintiff contacted an EEO counselor, filed a formal complaint, and the claims were investigated. The USPS issued a Final Agency Decision and concluded that, based upon the entire record, Plaintiff had failed to establish a *prima facie* case of discrimination on the basis of sex or disability. Further, the Agency found that the USPS had, in fact, articulated a legitimate, non-discriminatory reason for its actions, and there was no evidence of pretext by the USPS. (Doc. 46 ¶¶ 78-82.)

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger*, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an

1 element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

In the context of discrimination complaints, "'the mere existence of a *prima facie* case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment.'" *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) ). Summary judgment is still appropriate if defendant can rebut the *prima facie* case with a non-discriminatory reason. *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990) (citing *Reynolds v. Brock*, 815 F.2d 571, 575 (9th Cir. 1987)). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita*, 475 U.S. at 585-88; *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

Conclusory allegations already contained in the pleadings, which are unsupported by factual evidence, are insufficient to defeat a motion for summary judgment. *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1237 (9th Cir. 1998). Similarly, an affidavit which merely recites conclusory allegations will not defeat summary judgment. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990);

1  *see also Warren* 58 F.3d at 443 (while plaintiff's burden at the summary judgment stage is not overly burdensome, plaintiff cannot merely rely on generalizations).

In order to survive summary judgment, Plaintiff must produce some evidence to show that the government agency intentionally discriminated against her on the bases alleged or in retaliation for prior activity protected by Title VII. Plaintiff may do so by producing direct evidence of discrimination or under the now-familiar formula articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Furthermore, the evidence must be sufficient to show that plaintiff's allegations of discrimination are more likely than not to be true. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

## **DISCUSSION**

**A.     Exhaustion Requirements**

Title VII explicitly prohibits discrimination against employees of the federal government on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e. Furthermore, it is well established in the Ninth Circuit that Title VII prohibits retaliation against an employee for engaging in protected activities such as filing EEO complaints. *Ray v. Henderson,* 217 F.3d 1234, 1240-42 (9th Cir. 2000). *See also* 29 C.F.R. § 1614.101 (2002).

Pursuant to Title VII, the Equal Employment Opportunity Commission (EEOC) has the authority to enforce the provisions of § 2000e-16(a) and "issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities . . . ." 42 U.S.C. § 2000e-16(b). Accordingly, the EEOC has promulgated regulations which require a federal employee who claims that she has been discriminated against to initiate contact with an agency EEO Counselor within forty-five (45) days of the date of the alleged discriminatory matter. *See* 29 C.F.R. § 1614.105.[10]

---

[10] After initiating the pre-complaint process within **45 days** of the date of the matter alleged to be discriminatory, if the matter is not informally resolved, the EEO counselor

Claims of unlawful discrimination in federal employment, including those under Title VII and the Rehabilitation Act, may not be brought unless the plaintiff has first exhausted the administrative process provided for by federal statute, 42 U.S.C. § 2000e-16; *See Brown v. GSA*, 425 U.S. 820, 832 (1976); *Leong v. Potter,* 347 F.3d 1117, 1121-22 (9th Cir. 2003); *Leorna v. U.S. Dept. Of State,* 105 F.3d 548, 500 (9th Cir. 1997.)  In other words, claims **must** be timely pursued within the EEO administrative process, otherwise a plaintiff is barred from pursuing those claims in federal court. *See Johnson v. Treasury Department*, 27 F.3d 415, 416 (9th Cir. 1994); *Charles v. Garrett*, 12 F.3d 870, 873 (9th Cir. 1993).

In the instant case, Plaintiff's claims unequivocally fall within the purview of Title VII. Accordingly, Plaintiff was required to timely exhaust her EEO administrative remedies prior to filing suit in federal district court. *Id*. Despite Plaintiff's actual and constructive notice[11] of the time limits involved in filing an administrative complaint, the record reveals that Plaintiff wholly failed to exhaust her administrative remedies as to her 2003 Rio Salado Claim. (Doc. 46, ¶59.)

It is undisputed that Plaintiff failed to timely file the 2003 Rio Salado Claim as it was not filed within 15 days of receiving the counselor's notice of the right to file. Further, Plaintiff submitted a letter with her untimely filing conceding that the claim was untimely, but stated that she was unable to timely file her claim "due to [her] medical condition." However, an independent medical examination (IME) conducted one week before the complaint was due (October 7, 2003) and a medical record dated several days after she filed the formal EEO Complaint (October 21, 2003) do not support Plaintiff's assertion that she had a medical condition

---

notifies the complainant of the right to file a formal administrative complaint. *Patrick*, 255 F.3d at 915; 29 C.F.R. § 1614.105(d). The complainant must then file a formal written complaint within **15 days** after receiving the counselor's notice. *Patrick*, 255 F.3d at 915; 29 C.F.R. § 1614.106 (b).

[11] Plaintiff had the benefit of counsel at the time.

- 10 -

that interfered with her ability to timely file this EEO Complaint.[12] (Doc. 46 ¶¶ 59-61, Ex. C-8.) Given that Plaintiff signed and dated the formal complaint on September 30, 2003, but did not file it until after it was due, and she has provided no evidence establishing otherwise, this claim is dismissed.[13] (See Ex. C-7, p. 1.)

**B.     Establishing Claims of Discrimination Under Title VII**

Plaintiff may establish a claim of discrimination either by presenting direct evidence[14] of discrimination or by establishing a *prima facie* case of race, national origin, or gender discrimination using indirect evidence.

**1.     Indirect Evidence: *McDonnell Douglas* and its Progeny**

Where a plaintiff is faced strictly with indirect evidence of discrimination, the proper legal framework for determining whether a plaintiff's claims should survive summary judgment is the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792.

Pursuant to *McDonnell Douglas* and its progeny, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Id*. at 802. More specifically, to survive summary judgment in an employment discrimination case such as this, a plaintiff must demonstrate that (1) she belongs to a protected class, (2) she was qualified for the position, (3) she was subjected to an adverse employment action, and (4) similarly situated individuals

---

[12] Plaintiff failed to produce for the Court controverting evidence to suggest otherwise.

[13] Defendant asserts that Plaintiff's claims contained in the "ASP Claim" regarding her assertion that she was discriminated against when she was issued a LOW and for denial of FMLA should also be dismissed for failure to exhaust. The Agency properly declined to accept those issues for investigation and the Administrative Agency affirmed that decision. Plaintiff did not appeal those issues to the EEOC. Therefore, Plaintiff may not now raise those issues as part of her lawsuit. (Doc. 46 ¶¶ 21-23, 27, 29, 30.) This Court agrees. Therefore, to the extent those claims were raised by Plaintiff, they are hereby **denied**.

[14] There is no direct evidence in the record of discrimination.

- 11 -

were treated more favorably than plaintiff. *See St. Mary's,* 509 U.S. at 506. If the Plaintiff succeeds in establishing a *prima facie* case of discrimination, the burden (of production) shifts to the defendant, in this case the USPS, to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff's employment. *McDonnell Douglas*, 411 U.S. at 802. If the USPS is successful in doing so, meeting its burden necessarily causes any presumption that the employer discriminated against Plaintiff to "drop from the case" and the burden shifts back to Plaintiff to demonstrate that USPS's articulated reason(s) is pretext for unlawful discrimination.[15] *Bodet v. Coxcom, Inc.,* 366 F.3d 736, 743 (9th Cir. 2004)(citation omitted). Plaintiff must then demonstrate that the proffered reason was not the *actual reason* for the [adverse] employment decision. A plaintiff may succeed in this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (U.S. 1981)(*citing McDonnell Douglas*, 411 U.S., at 804-805).

Where the plaintiff has established a *prima facie* case with direct evidence of discriminatory intent, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Bodet,* 366 F.3d 736, 743 (9th Cir. 2004)(citation omitted). However, where a plaintiff relies upon indirect evidence to show that the employer's stated reason for the adverse employment action is not the actual reason, "[s]uch evidence…must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of a prohibited ground." *Id.* (citation omitted).

---

[15] While the burden of production shifts in this framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450, U.S. at 253; *Bodet v. Coxcom, Inc.,* 366 F.3d 736, 743 (9th Cir. 2004)(citations omitted).

## C. Establishing Claims of Retaliation Under Title VII

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) her employer thereafter subjected her to an adverse employment decision[16], (3) and there was a causal link between the two. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988). The facts on which the causal connection analysis turns are also pertinent to the analysis of whether Defendant had legitimate business reasons for his actions. The application of the facts of this case to this law can be found under §D1.

## D. Establishing Claims of Discrimination Under the Rehabilitation Act

To establish a *prima facie* case under the Rehabilitation Act, Plaintiff must prove that: (1) she is disabled within the meaning of the Act; (2) she is a qualified individual able to perform the essential functions of her job, either with or without reasonable accommodations; and (3) the Agency acted adversely against her solely because of her disability. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999); *Wong v. Regents of University of California,* 192 F.3d 807, 816 (9th Cir. 1999).

Plaintiff has failed to respond substantively to the assertions contained in Defendant's Motion for Summary Judgment, and because it is well established in the Ninth Circuit that the District Court is not obligated to "comb the record," the Plaintiff is unable to establish a *prima facie case* under the Rehabilitation Act. The district court need only consider evidence set forth in the moving or opposing papers and parts of the record specifically referred to therein. The Court need not "comb the record" looking for other evidence. *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001). More specifically, Plaintiff has not produced specific evidence that she is a qualified individual

---

[16] An alleged retaliatory act qualifies as an adverse employment action only if it is "reasonably likely to deter employees from engaging in protected activity." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2004) (quotations omitted).

1 able to perform the essential functions of her job, either with or without reasonable
2 accommodations or that the USPS acted adversely against her solely because of her alleged
3 disability. *Zukle*, 166 F.3d at 1045 (9th Cir. 1999); *Wong,* 192 F.3d at 816 (9th Cir. 1999).
4 Consequently, Plaintiff has failed to satisfy the requirements of the Federal Rules of Civil
5 Procedure, as well as the elements necessary to establish a *prima facie* case under the
6 Rehabilitation Act. Fed. R. Civ. P. 56(e); *see also Matsushita*, 475 U.S. at 585-88; *Brinson*,
7 53 F.3d at 1049 (9th Cir. 1995); *Zukle*, 166 F.3d at 1045 (9th Cir. 1999); *Wong,* 192 F.3d at
8 816 (9th Cir. 1999). Accordingly, summary judgment in favor of Defendant is appropriate
9 for all disability discrimination claims filed under the Rehabilitation Act.

**1.     EEO 83-00/The ASP Claim**

Plaintiff has alleged that in the ASP claim, she submitted a formal complaint of discrimination in which she alleged that she was not selected to the Associate Supervisor Program (ASP) because of her race, sex, alleged disability[17], and in retaliation for prior protected activity.

**Discrimination**

As the Court previously set forth, the burden is on Plaintiff to establish that (1) she belongs to a protected class, (2) she was qualified for the position, (3) she was subjected to an adverse employment action, and (4) similarly situated individuals were treated more favorably. *See St. Mary's,* 509 U.S. at 506.

Plaintiff has successfully established that she is a Hispanic woman, thereby satisfying the first element of the *McDonnell Douglas* test. However, Plaintiff has failed to produce evidence to demonstrate that she was qualified for the position, that she was subject to an

---

[17] The Court previously disposed of Plaintiff's disability discrimination claims based on Plaintiff's failure to satisfy her burden under the Rehabilitation Act and her failure to provide specific controverting evidence as required by Fed.R.Civ.P.56.

adverse employment action,[18] or that similarly situated individuals were treated more favorably by the USPS. *See St. Mary's,* 509 U.S. at 506.

Assuming arguendo that Plaintiff had satisfied each prong of *McDonnell Douglas*, the burden of production shifts to the USPS to articulate a legitimate, nondiscriminatory reason for not selecting Plaintiff to the ASP. *McDonnell Douglas*, 411 U.S. at 802. The ASP is designed to recruit and select qualified individuals to fill Associate Supervisor positions. (Doc. 46, Ex. A-2.) Candidates are evaluated based upon their supervisor's evaluation, sick time records, leave of absence records, disciplinary records, safety records, and any other information considered relevant to personal suitability determination by the Review Committee. *Id.*

According to the record, Plaintiff was advised on February 10, 1999 that, under the USPS policies, an employee is "expected to report to work daily, as scheduled and on time." Employees who cannot report to work are to call the office one hour before the scheduled start time for their shift. (Doc. 46, Ex. A-8.) On February 13, 2000, Plaintiff failed to show up for her scheduled shift, and she did not call work before her shift began, as she was in jail. (Doc. 46, A-7.) Consequently, on March 10, 2000, Plaintiff's supervisor, Ms. Hernandez, gave Plaintiff a Letter of Warning (LOW). (Doc. 46, A-7.)  The record also shows that Plaintiff had been disciplined by Ms. Hernandez on several other occasions, including: (1) Discussion on November 23, 1999, on Plaintiff's failure to meet duties and responsibility of a PTF Mail Processor Clerk; (2) March 15, 2000 LOW for failure to report for duty/failure to follow proper notification procedures, resulting in AWOL; (3) May 11, 2000, discussion regarding wandering away from her work station, reporting to her machine at her scheduled time, and keeping gainfully employed; (4) June 29, 2000, discussion for failure to maintain

---

[18] Arguably, not being selected to the Associate Supervisor Program (ASP) is the adverse employment action Plaintiff is asserting. In which case, the Court will consider the element satisfied.

1 regular attendance; (5) July 5, 2000, discussion for creating a hostile work environment. (Doc. 46, Ex. A-4, p. 2.)

Despite Plaintiff's record of disciplinary actions, on or about June 20, 2000, she submitted an application for the Fall 2000 ASP. (*Id*, ¶ 3.) As is policy at the USPS, Plaintiff's supervisor completed the ASP Candidate Evaluation Form wherein she rated Plaintiff as "unacceptable" in the work areas of leadership, decision making, communications, and work conduct. (*Id.* at p. 4, ¶ 4.) On or about July 11, 2000, Plaintiff was advised that she had not been selected for the position of ASP because she had not met the acceptable standard for discipline suitability based upon discipline records for the previous two years. (*Id.* at p. 4, ¶ 5.)

Based on the foregoing, the Court finds that the USPS has satisfied its burden under *McDonnell Douglas* by articulating a legitimate, nondiscriminatory reason for not selecting Plaintiff to the ASP. *McDonnell Douglas*, 411 U.S. at 802. Therefore, the burden shifts back to Plaintiff to demonstrate that the USPS's articulated reason is pretext for unlawful discrimination. *Bodet,* 366 F.3d at 743 (9th Cir. 2004)(citation omitted). Plaintiff proffered no such evidence. Therefore, she has clearly failed to establish that the USPS's articulated reason for disqualifying her from the ASP program was a pretext for discrimination against her based on her race, national origin, sex, or disability. Accordingly, summary judgment in favor of Defendant is appropriate as to Plaintiff's ASP discrimination claims.

Retaliation

It is undisputed that Plaintiff filed formal complaints of discrimination claiming that she had been discriminated against on the basis of race (Hispanic), sex (female), mental disability (depression), and retaliation for prior EEO activity when she was disqualified from the ASP on August 1, 2000. (Doc. 46 ¶¶ 19-23.) It is clear that filing formal EEO complaints, such as the complaints filed by Plaintiff, amount to protected activity under Title VII. The matter, however, of whether Plaintiff has established that the USPS subjected Plaintiff to an

adverse employment decision is not as unequivocal. However, strictly for the purpose of this motion, the Court will assume that Plaintiff is asserting a failure to promote argument, and her failure to be selected for the ASP satisfies that burden. Despite this, Plaintiff again has wholly failed to provide the Court with any evidence to support the assertion that there was a causal link between the filing of her complaints and the fact that she was not selected for the ASP program. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988). In fact, the only evidence in the record regarding Plaintiff and the ASP that has been brought to the Court's attention pertains to Plaintiff's disciplinary record-which this Court has previously concluded was a legitimate, nondiscriminatory reason for the USPS not selecting Plaintiff to the ASP. Consequently, summary judgment as to retaliation is granted in favor of Defendant and against Plaintiff.

**2.     EEO 62-03/The Dilettoso Claim**

In EEO 62-03, Plaintiff has alleged that she submitted a formal complaint of discrimination in which she alleged that she was discriminated on the basis of her sex. Plaintiff has previously established that she is a woman and therefore, she is a member of a protected class. However, to prevail on her claim for sex discrimination, she must establish that she was qualified for the position, she was subjected to an adverse employment action, and similarly situated individuals were treated more favorably. *See St. Mary's,* 509 U.S. at 506.  Here, when the issue regarding sexual harassment arose between Plaintiff and Dilettoso,[19] the record evidence shows that both she and Dilettoso were placed on administrative leave pending and investigation in their allegations. Plaintiff did not produce any controverting evidence to the contrary. Moreover, Plaintiff has failed to produce for the Court evidence that similarly situated individuals were treated more favorably. *See St.*

---

[19] Dilettoso accused Plaintiff of stalking him, and in response, Plaintiff accused him of harassing her. Plaintiff then immediately requested that she be transferred away from Dilettoso, to Rio Salado. The request was granted.

- 17 -

*Mary's,* 509 U.S. at 506.[20] As a result, the Court finds in favor of Defendant for summary judgment as to Plaintiff's Dilettoso Claim for gender discrimination.

**3.     EEO 77-03/The 2003 Rio Salado Claim**

Plaintiff has alleged that in EEO 77-03, she submitted a formal complaint of discrimination in which she alleged she was discriminated against on the basis of an alleged disability and retaliation when she was assigned to the Rio Salado Facility as a Mail Processing Clerk and then denied reasonable accommodation resulting in her adverse treatment. The Court previously determined that this claim is due to be dismissed for failure to exhaust administrative remedies.[21] Moreover, Plaintiff has failed to provide the Court with evidence establishing the necessary elements of discrimination based on an alleged disability and retaliation.[22] Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Therefore, summary judgment in favor of Defendant is appropriate as to this claim.

///

---

[20] Furthermore, Plaintiff failed to actually articulate an adverse employment action.

[21] Plaintiff failed to produce evidence controverting Defendant's assertion that she failed to timely file the 2003 Rio Salado Claim, as it was not filed within 15 days of receiving the counselor's notice of the right to file. Accordingly, summary judgment is granted in favor of Defendant for Plaintiff's failure to timely exhaust her administrative remedies.

[22] As stated previously, Plaintiff's Response to Defendant's Motion for Summary Judgment is completely nonresponsive to the specific arguments made in Defendant's motion; despite her burden to do so, she wholly fails to cite to specific evidence in the record to establish her *prima facie* claims. For example, she fails to controvert the USPS's legitimate business decision regarding available work within her physical restrictions or provide any evidence that any of the USPS's decisions were made on the basis of previous EEO activity on the part of Plaintiff.

### 4. EEO 44-04/The 2004 Rio Salado Claim

Plaintiff has alleged claims of retaliation and sex discrimination in her EEO 44-04 Rio Salado claim. On May 27, 2004, Plaintiff submitted a formal complaint of discrimination in which she alleged she was discriminated against on the basis of her sex, an alleged disability, and retaliation.

While Plaintiff was assigned to Rio Salado in 2003 and 2004, according to the evidence before the Court, the USPS tried to find suitable work that was within her medical restrictions. (Doc. 46 ¶¶ 66-77.) Plaintiff's medical restrictions, however, tended to vary. Plaintiff had a lifting restriction of twenty (20) pounds or less, and she claimed to be unable lift items above her shoulder due to severe pain. She also claimed to have a mental impairment which prevented her from working night shifts.[23] (Doc. 46 ¶¶ 67-69, 72.) At the USPS' request, Plaintiff underwent an independent medical examination, which revealed no objective basis for her inability to lift beyond shoulder. (Doc. 46 ¶¶ 72, 73.) Despite those findings, USPS offered Plaintiff a position that was within her alleged restrictions. (Doc. 46 ¶¶ 74- 77.) However, a short time later, Plaintiff refused to do the job claiming that it violated her medical restrictions. (Doc. 46 ¶¶ 74-77.) Plaintiff contacted an EEO counselor, filed a formal complaint, and the claims were investigated. The USPS issued a Final Agency Decision and concluded that, based upon the entire record before it, Plaintiff had failed to establish a *prima facie* case of discrimination on the basis of sex or disability. Further, the Agency found that the USPS had articulated a legitimate, non-discriminatory reason for its actions, and there was no evidence of pretext. (Doc. 46 ¶¶ 78-82.) Plaintiff had refused vacant funded positions that were within her restrictions and refused to pursue any of the

---

[23] Plaintiff's assertions were not supported by evidence for this Motion for Summary Judgment, as required by LRCiv 56.1 and Fed.R.Civ.P. 56 (because she did not file a Separate Statement of Facts). However, because the Defendant included them in his Statement of Facts, they will be accepted as true for the purpose of the instant motion.

1 options available to her, such as requesting a change of craft. (Doc. 46 ¶¶ 83-86.) In 2003-
2 2004, Plaintiff continued to be unable to perform her full time duties, and rejected and
3 objected to the work that was offered to her at the Rio Salado facility. (Doc. 46 ¶¶ 72-77,
4 83-86.) Plaintiff's claims of discrimination on the basis of sex, disability (mental and
5 physical) and retaliation for prior EEO activity are not supported by evidence to suggest that
6 the USPS officials acted on any improper basis when looking for work within Plaintiff's
7 restrictions. *Id.* Consequently, Defendant is entitled to judgment in his favor on the 2004 Rio
8 Salado claim.

## CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has failed to establish a *prima facie* case of discrimination or retaliation under Title VII or the Rehabilitation Act. Furthermore, Plaintiff has failed to comply with the Local and Federal Rules of Civil Procedure, as well as the EEO administrative requirements. Therefore, the Defendant's Motion for Summary Judgment is **GRANTED** in full.

**IT IS HEREBY ORDERED GRANTING** Defendant's Motion for Summary Judgment in his favor and against Plaintiff.

**IT IS FURTHER ORDERED** that the Clerk of Court shall hereby terminate this case.

DATED this 10th day of June, 2008.

Stephen M. McNamee
United States District Judge